UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LIONEL GIBSON, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>J. KOONS and E. KEPNER, )<br>    Defendants. ) | CAUSE NO.: 3:22-CV-29-JEM |

**OPINION AND ORDER**

Lionel Gibson, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding "against Casework Manager J. Koons and Correctional Officer E. Kepner in their individual capacities for compensatory and punitive damages for retaliating against him in late November 2019 for filing grievances against their co-workers [Fox and Groves] by filing a false conduct report charging him with possessing a knife they planted in his bedding in violation of the First Amendment." [DE 42] at 2. Second, he is proceeding "against Casework Manager J. Koons in her individual capacity for compensatory and punitive damages for using excessive force when she ordered guards to drag the stab wounds on his bare feet on the floor from I-Dorm to RHU in November 2019 in violation of the Eighth Amendment." *Id.* The defendants filed a motion for summary judgment. [DE 88]. Gibson filed a response [DE 100, 101, 102] , and the defendants filed a reply. [DE 109, 110]. Gibson then filed an authorized sur-response, and the defendants filed a sur-reply. [DE 112, 113]. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict

1

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [1986]. Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

**I.     Material Facts**

Casework Manager Koons and Correctional Officer Kepner submit affidavits, in which they attest to the following facts: At all relevant times, Casework Manager Koons was a caseworker in the I-Dorm of Miami Correctional Facility ("MCF"). [DE 89-1] at 2. On November 19, 2019, Gibson came to Casework Manager Koons' office to discuss issues he'd had with MCF staff members Fox and Groves. *Id.* Casework Manager Koons helped Gibson process informal grievances regarding his issues with these staff members. *Id.* at 3.[1]

The next day, on November 20, 2019, Casework Manager Koons conducted a search of Gibson's cell due to increased safety and security concerns in I-Dorm. [DE 89-1] at 3. Casework Manager Koons approached Gibson's cell, Cell 201/202, and asked him to step out of the cell and have a seat in the dayroom. *Id.* at 3-4. At this point, Gibson turned around, started arranging his property, and tucked his hands into the back waistband of his pants. *Id.* at 4. Casework Manager

---

[1] Gibson asserts Casework Manager Koons attempted to dissuade him from filing the grievances, but concedes she ultimately processed the informal grievances for him. [DE 102] at 8-9.

Koons asked Gibson what he was doing, and he responded he was just grabbing his headphones. *Id.* As Gibson exited his cell, Casework Manager Koons told him to turn around and put his hands on his head so she could pat him down. *Id.*[2] Gibson turned as through he was going to follow her directions, but then started walking away with his hands out in front of him. *Id.* Casework Manager Koons gave Gibson three commands to stop walking and put his hands on his head, but he refused these orders. *Id.* Gibson then darted into Cell 205/206 and flushed something in the toilet before Casework Manager Koons could get to him. *Id.* at 5.[3] Casework Manager Koons ordered Gibson to stop and attempted to remove him from the cell, but he refused. *Id.* Casework Manager Koons called for assistance via radio, at which point Gibson left Cell 205/206 and sat down on the top of the range with his legs hanging over the edge of the railing. *Id.* Casework Manager Koons grabbed Gibson by his arms, pulled him backwards away from the railing, and secured his hands. *Id.* Correctional officers arrived to assist, at which point Gibson stopped resisting and submitted to restraints. *Id.* at 5-6. Once Gibson was restrained, the correctional officers helped him to his feet and escorted him down the stairs. *Id*. at 6. Gibson walked on his own down the stairs and was wearing socks on both feet throughout the entire incident. *Id*. The correctional officers escorted Gibson from I-Dorm to the restricted housing unit ("RHU"). *Id.* Casework Manager Koons attests she never witnessed any stab wounds on Gibson's feet during this incident and did not order any correctional officer to drag Gibson's bare feet on the floor. *Id.*[4]

---

[2] Gibson "objects" that Casework Manager Koons never gave him any orders during this incident, and asserts repeatedly that he was never charged with fleeing or resisting any orders from Casework Manager Koons. [DE 102] at 20-25. The Court accepts as undisputed that Gibson was never charged with fleeing or resisting any orders related to this incident.
[3] Gibson concedes he "briefly entered" Cell 205/206, but "objects" to the rest of the statement because he was not charged with fleeing or resisting an order. [DE 102] at 22-23.
[4] Gibson responds that Casework Manager Koons instructed the correctional officers not to let him put on shoes, informed them of his injury, and advised them to "drag his ass." [DE 102] at 31.

Once Gibson had been removed by the correctional officers, Casework Manager Koons returned to Cell 205/206, saw a red wire sticking out of the toilet, and pulled the red wire out of the toilet to discover a small cell phone. [DE 89-1] at 6; [DE 89-2].[5] Casework Manager Koons then went back to Gibson's cell, conducted a visual search, and discovered a homemade extension cord and altered tablet charger. [DE 89-1] at 6. Casework Manager Koons did not inventory or remove any of Gibson's other property from his cell. *Id.* at 7. Casework Manager Koons left Gibsons' cell and wrote a Use of Force Report, Incident Report, and Conduct Report for the "Use and/or Possession of Cellular Telephone." [DE 89-1] at 7-8; [DE 89-4; DE 89-5; DE 89-6].

After Casework Manager Koons left Gibson's cell, custody staff [including Correctional Officer Kepner] arrived to inventory and remove the rest of Gibson's property because he was being moved to the RHU. [DE 89-1] at 7; [DE 89-8] at 1. While Correctional Officer Kepner was inventorying Gibson's remaining property, she picked up his bed mat and a homemade knife fell from the mat onto the floor. [DE 89-8] at 1; [DE 89-9].[6] Casework Manager Koons was not present in Gibson's cell at this time. [DE 89-1] at 7-8.

The next day, on November 21, 2019, Correctional Officer Kepner wrote a conduct report for "possession of a deadly weapon" related to the knife that she allegedly found in Gibson's cell ("November 21 conduct report"). [DE 89-8] at 1; [DE 89-9]. Casework Manager Koons was not present when the November 21 conduct report was written, had nothing to do with the report, and did not direct Correctional Officer Kepner to write the report. [DE 89-1] at 8; [DE 89-8] at 2. A disciplinary hearing was held for the "Use and/or Possession of Cellular Telephone" charge, and

---

[5] Gibson objects that the video footage does not "show these events." [DE 102] at 34-35. It iss true the video evidence does not show what occurred in Cell 205/206, but Casework Manager Koons' attestations regarding what occurred in Cell 205/206 are admissible evidence and Gibson concedes he doesn't know what occurred in Cell 205/206 at this point because he "was not present." *Id.* at 34.
[6] Gibson disputes that a knife was found in his cell, and asserts the knife was planted by custody staff. [DE 102] at 40-42.

Gibson was found guilty and sanctioned. [DE 89-7]. A separate disciplinary hearing was held for the "possession of deadly weapon" charge, and Gibson was found not guilty due to "inconsistencies with paperwork." [DE 89-11].

**II.    Analysis**

    A.  <u>First Amendment retaliation claim</u>

Gibson is proceeding against Casework Manager Koons and Correctional Officer Kepner "for retaliating against him in late November 2019 for filing grievances against their co-workers [Fox and Groves] by filing a false conduct report charging him with possessing a knife they planted in his bedding in violation of the First Amendment[.]" [DE 42] at 2.

To prevail on a First Amendment retaliation claim, Gibson must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To demonstrate causation, Gibson must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted).

"Section 1983 creates a cause of action based upon personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* Put otherwise, individuals will only be liable for their own misconduct, unless they are responsible for creating the peril that leads to the constitutional violation. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

5

Casework Manager Koons argues that summary judgment is warranted in her favor because she wasn't personally responsible for any alleged constitutional violation, as she wasn't involved with inventorying Gibson's property or writing the November 21 conduct report. [DE 93] at 14-15. Specifically, both Casework Manager Koons and Correctional Officer Kepner attest that: (1) Casework Manager Koons was not present when Gibson's cell was inventoried and the knife was allegedly discovered; (2) Correctional Officer Kepner, not Casework Manager Koons, wrote the November 21 conduct report; and (3) Casework Manager Koons was not involved with and did not direct Correctional Officer Kepner to write the November 21 conduct report. In his response, Gibson argues Casework Manager Koons was personally involved because she "was part of the Unit Team with access to plant the weapon if one indeed ever actually existed." [DE 102] at 43. But Gibson's mere speculation that Casework Manager Koons *could* have been involved with the alleged constitutional violation is insufficient to survive summary judgment. *See Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006) ("speculation or conjecture will not defeat a summary judgment motion"). Gibson also argues that "Defendants Koons' and Kepner's credibility is something left to the trier of fact." [DE 102] at 43. But "when challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Because Gibson provides no non-speculative evidence disputing the defendants' attestations that Casework Manager Koons wasn't involved with inventorying Gibson's property or writing the November 21 conduct report, the Court must accept those attestations as undisputed. Accordingly, there's no evidence by which a reasonable jury could conclude Casework Manager Koons was personally responsible for any constitutional violation. Summary judgment is therefore warranted in favor of Casework Manager Koons on this claim.

Correctional Officer Kepner argues that summary judgment is warranted in her favor because Gibson cannot show any causal nexus between his protected First Amendment activity and the November 21 conduct report, as Correctional Officer Kepner never knew anything about Gibson's informal grievances against Fox and Groves at the time she wrote the November 21 conduct report. [DE 93] at 16-17. Specifically, she attests she was never made aware of any grievances Gibson filed against MCF staff members Fox and Groves and does not believe she even knows who those staff members are. [DE 89-8] at 2. In his response, Gibson argues he "cannot confirm nor deny what Defendant Kepner knew or when she was made aware of it. Whether she knew or not is not at issue at the heart of the issues of this case." [DE 102] at 45. But whether Correctional Officer Kepner knew of Gibson's grievances against Fox and Groves *is* an issue at the heart of this case, as Gibson must show a causal connection between his filing of those grievances and Correctional Officer Kepner's writing of the November 21 conduct report. Specifically, Correctional Officer Kepner cannot be held liable for retaliating against Gibson in violation of his First Amendment rights where there's no evidence she knew of -- let alone was motivated by -- his protected First Amendment activity. *See Bridges*, 557 F.3d at 546; *Woodruff*, 542 F.3d at 551. Because Gibson concedes he has no evidence Correctional Officer Kepner knew he filed grievances against Fox and Groves, no reasonable jury could conclude Gibson's filing of those grievances was "at least a motivating factor" in Correctional Officer Kepner's decision to write the November 21 conduct report. *See Bridges*, 557 F.3d at 546. Summary judgment is therefore warranted in favor of Correctional Officer Kepner on this claim.

B. Eighth Amendment claim

Gibson is proceeding against Casework Manager Koons for using excessive force when she ordered the correctional officers to drag the stab wounds on his bare feet on the floor from I-Dorm to the RHU on November 20, 2019. [DE 42] at 2.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to survive summary judgment on an excessive force claim, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id*. at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 [7th Cir. 2019].

Casework Manager Koons argues that summary judgment is warranted in her favor because she never witnessed the stab wounds on Gibson's feet and the video evidence shows Gibson was not dragged while being escorted out of I-Dorm. [DE 93] at 18-20. Regarding Casework Manager Koons' argument that she did not witness the stab wounds on Gibson's feet, Gibson responds that Casework Manager Koons was "fully aware" of his injuries and informed the correctional officers of his injuries. [DE 102] at 31-32. A reasonable jury could credit this testimony and conclude Casework Manager Koons knew Gibson had stab wounds on his feet. And regarding Casework Manager Koons' argument the video evidence shows Gibson was not dragged while being escorted out of I-Dorm, Gibson responds that Casework Manager Koons told the

correctional officers to "drag his ass" from I-Dorm to the RHU, but the correctional officers only dragged him after they left I-Dorm and were no longer in view of the cameras. [DE 102] at 31-32. Because the video footage only shows what occurred inside of I-Dorm and does not show Gibson's full escort to the RHU, a reasonable jury could credit Gibson's version of events and conclude the correctional officers waited until they were outside the view of the cameras to carry out Casework Manager Koons' instruction to drag Gibson on his injured feet. Accordingly, construing the facts in the light most favorable to Gibson, a reasonable jury could credit his version of the facts and could conclude Casework Manager Koons knew of his injuries and used excessive force against him by instructing the correctional officers to drag him on his injured feet despite the fact he was not actively resisting. *See McCottrell*, 933 F.3d at 663. Because Gibson's version of events, if believed, establishes an Eighth Amendment violation, summary judgment must be denied on this claim. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (reminding that the court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder"); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761–62 (7th Cir. 2006) (stating that the court must credit the non-moving party's version of the facts "and resist the temptation to evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face," even if the allegations cause the court "to raise a brow").

Lastly, Casework Manager Koons argues she is entitled to qualified immunity because she did not order Gibson be dragged on his injured feet. [DE 93] at 20-22. This argument fails because it asks the Court to resolve disputed facts in favor of the defendants. See *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) ("[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation"); *Walker v. Benjamin*, 293 F.3d 1030,

9

1037 (7th Cir. 2002) (recognizing that disputed material facts regarding the elements of a constitutional claim precludes dismissal based on qualified immunity). Crediting Gibson's version of events, Casework Manager Koons could have violated clearly established law by instructing correctional officers to drag Gibson on his injured feet despite the fact he was not actively resisting. *See McCottrell*, 933 F.3d at 663. Thus, Casework Manager Koons is not entitled to qualified immunity on this claim.

### III.    Conclusion

For these reasons, the Court:

(1) **GRANTS** the defendants' summary judgment motion [DE 88] as to Gibson's First Amendment claim but **DENIES** it as to Gibson's Eighth Amendment claim;

(2) **DISMISSES** Correctional Officer Kepner from this case; and

(3) **REMINDS** the parties this case is now proceeding only on Gibson's remaining claim "against Casework Manager J. Koons in her individual capacity for compensatory and punitive damages for using excessive force when she ordered guards to drag the stab wounds on his bare feet on the floor from I-Dorm to RHU in November 2019 in violation of the Eighth Amendment."

SO ORDERED this 12th day of December, 2024.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Plaintiff, *pro se*